**04-22549**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil Action No. _____ **CIV-SEITZ**

**MAGISTRATE JUDGE BANDSTRA**



COMMODITY FUTURES TRADING COMMISSION

    Plaintiff,

v.

BRICKELL KEY FINANCIAL, LLC,
EDUARDO BARALE,
MICHAEL MESA, and
MALINI NERSIAN,

    Defendants.

## COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL PENALTIES UNDER THE COMMODITY EXCHANGE ACT

### I. SUMMARY

1. Brickell Key Financial, LLC ("BKF") was a Florida-based registered introducing broker controlled by Eduardo Barale ("Barale") that solicited retail public customers to trade commodity futures contracts and options on commodity futures contracts. From approximately June 2002 to April 2003, BKF employees used false and misleading representations to attract more than 280 customers. Specifically, BKF and several of its employees, including, but not limited to Michael Mesa ("Mesa") and Malini Nersian ("Nersian"), made false and misleading sales solicitations to retail public customers and prospective customers by: (1) exaggerating the magnitude and likelihood of potential profit and downplaying the risk of loss from trading futures and options on futures; (2) representing that their trade recommendations could result in large profits within short periods of time; (3) failing to inform customers and prospective customers that the vast majority of its customers who traded lost money; and (4) providing fraudulent or misleading advertisements to customers. BKF employees, including, but not limited to Mesa and Nersian, had no reasonable basis to make these representations. BKF employees also failed to

1



advise such customers that approximately 93 percent of BKF's customers closed their accounts with overall loses. Customers lost approximately $1.7 million.

2. The acts described in paragraph 1 violate Sections 4b(a)(2)(i) and (iii), and 4c(b) of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. §§ 6b(a)(2)(i) and (iii), and § 6c(b) (2002), and Commission Regulation ("Regulation") 33.10, 17 C.F.R. § 33.10 (2004). The violations of Section 4b(a)(2)(i) and (iii), and 4c(b) of the Act by Mesa, Nersian, and other BKF employees were done within the scope of their employment with BKF and, therefore, BKF is liable for those violations, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B).

3. As CEO and president of BKF, defendant Barale controlled the operations of BKF and its associated persons ("APs"), and failed to act in good faith or knowingly induced, directly or indirectly, the act or acts constitution violations, and consequently is liable for BKF's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), because he did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violations. Additionally, Barale violated Regulation 166.3, 17 C.F.R. § 166.3, by failing to supervise diligently the activities of BKF's officers, employees, and agents relating to its business as a Commission registrant.

4. Accordingly, the Commodity Futures Trading Commission ("Commission" or "CFTC") brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, to enjoin the defendants' unlawful acts and practices and to compel their compliance with the Act. In addition, the Commission seeks disgorgement of the defendants' ill-gotten gains, restitution to customers, a civil monetary penalty and such other relief as this Court may deem necessary or appropriate.

5. Unless restrained and enjoined by this Court, the defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

2

## II. JURISDICTION AND VENUE

6. The Act prohibits fraud in connection with the trading of commodity futures contracts and options on commodity futures contracts and establishes a comprehensive system for regulating the purchase and sale of commodity futures contracts and options on commodity futures contracts.

7. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

8. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a(e), because the defendants are found in, inhabit, or transact business, among other places, in this District, or the acts and practices in violation of the Act have occurred, are occurring, or are about to occur, among other places, within this District. Specifically, BKF is a Florida corporation with its principal business address in Miami, Florida, which defendant Barale controlled.

## III. FACTS RELEVANT TO ALL COUNTS

### A. Statutory Background

9. A futures commission merchant ("FCM") is defined in Section 1a(20) of the Act, 7 U.S.C. § 1a(20), and Regulation 1.3(p), 17 C.F.R. § 1.3(p), with certain qualifications, as an individual, association, partnership, corporation, or trust that is engaged in soliciting or in accepting orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility; and in or in connection with such solicitation or acceptance of orders, accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom.

3

10. An introducing broker ("IB") is defined in Section 1a(23) of the Act, 7 U.S.C. § 1a(23), and Regulation 1.3(mm), 17 C.F.R. § 1.3 mm, with certain qualifications, as any person, other than an associated person of an FCM, engaged in soliciting or in accepting orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility who does not accept any money, securities, or property (or extend credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom.

11. An associated person is defined in Regulation 1.3(aa)(1) and (2), 17 C.F.R. § 1.3(aa)(1) and (2), with certain qualifications, as a natural person associated with any FCM or IB, as a partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves: (i) the solicitation or acceptance of customers' or options customers' orders; or (ii) the supervision of any person or persons so engaged.

### B. The Parties

12. Plaintiff Commission is the independent federal regulatory agency responsible for administering and enforcing the provisions of the Act and the Regulations promulgated thereunder.

13. Defendant Brickell Key Financial, LLC, was incorporated on April 24, 2002, in Florida. BKF registered with the Commission as an IB on June 13, 2002, and withdrew its registration on August 27, 2003. BKF's business address was 1221 Brickell Avenue, Suite 1140, Miami, Florida 33131.

14. Defendant Eduardo Barale's last known address is in Aventura, Florida. Barale was the CEO and president of BKF and registered as an AP of BKF in June 2002, and withdrew his registration as a principal on August 27, 2003, and as an AP on September 18, 2003.

15. Defendant Michael Mesa currently resides in Hialeach, Florida. Mesa registered as an AP with BKF on November 22, 2002, and withdrew her registration on June 5, 2003.

4

16. Defendant <u>Malini Nersian</u> currently resides in Fort Lauderdale, Florida. Nersian registered as an AP with BKF on October 4, 2002, and withdrew registration on May 28, 2003.

### C.  BKF's General Operations

17. Between at least June 2002 and April 2003, BKF, by and through its APs, including, but not limited to Mesa and Nersian, solicited members of the general public to open commodity trading accounts at Vision Limited Partnership ("Vision") and Alaron Trading Corporation ("Alaron"), registered FCMs, to trade futures and options on futures through BKF. Once a member of the public became a BKF customer, most of the trades made by the customers in their Vision and Alaron accounts were based on the recommendations of BKF's APs.

18. Barale was the CEO and president of BKF and was responsible for BKF's overall operations. He made the day-to-day decisions necessary to run BKF, and he had final approval of policies and procedures at BKF.

### D.  BKF Exaggerated the Magnitude and Likelihood of Potential Profits and Downplayed the Risk of Loss to Customers and Prospective Customers

19. BKF's APs solicited members of the public to open commodity futures trading accounts and purchase or sell futures contracts or options on futures contracts. During the initial telephone solicitation of prospective customers, BKF's APs often represented that the cash price of a certain commodity was about to go up because demand would exceed supply, often due to seasonal patterns or well known events such as the impending war with Iraq. Such representations included the following:

(a)   demand for heating oil always increased in autumn due to the impending onset of colder weather, or words to that effect;

(b)   that the impending war with Iraq would cause an increase in the price of oil, or words to that effect; and

(c)   the customer could at least double his/her investment during the cold season investing in heating oil, crude oil, and unleaded gas options, or words to that effect.

5

20. Once prospective customers indicated a willingness to invest, they were turned over to a senior AP, such as Mesa or Nersian, to help open the account and make trading recommendations once the account was open and funded. BKF's senior APs, such as Mesa and Nersian, misrepresented the profit potential of their commodity futures and options trading recommendations, such as representing that:

   (a)  if the customer invested in the futures and options market, he/she would likely get a return of 30 to 50 percent, or words to that effect;

   (b)  the customer could at least double his/her investment during the cold season investing in heating oil, crude oil, and unleaded gas options, or words to that effect;

   (c)  the customer could make a significant profit trading crude oil because the next big price move would be in crude oil because of the forthcoming Iraqi war and crude oil was at an eleven year low, or words to that effect.

21. BKF's APs, including, but not limited to Mesa and Nersian, had no reasonable basis for making these profit claims because they knew or should have known that the representations described in paragraphs 19 through 20 exaggerated the magnitude and likelihood of potential profit because widely-reported geopolitical crisis and seasonal demands were already factored into the prices of futures and options on futures.

22. BKF's APs, including, but not limited to Mesa and Nersian, also affirmatively misrepresented the risks of trading commodity futures and options to customers and prospective customers. BKF's APs assured at least one customer that she would not lose any money because her money would be put into a low risk stable trading fund that would achieve slow gains. At least one other customer was assured by a BKF AP that he would not lose any money because there was a low risk of loss and the AP guaranteed that his account would make money. Finally, at least one other customer was told that BKF used a software program to trade the S&P that minimized almost all risk of trading.

6

23. The assurances that customers would not lose any money trading commodity futures and options that were made by BKF's APs, including, but not limited to Mesa and Nersian, had no basis in fact.

24. In their sales solicitations, BKF APs, including, but not limited to Mesa and Nersian, deliberately misrepresented to prospective customers and existing customers the need to trade immediately so as not to miss what they indicated was a fleeting opportunity to make a substantial profit. If prospective customers hesitated about trading, BKF's APs increased the frequency of their calls and the urgency of their sales pitches, again urging them to invest immediately in order to maximize their profits.

25. There was no reasonable basis for BKF's APs, including, but not limited to Mesa and Nersian, to make the representations in paragraph 24 or any other representations to customers and prospective customers that they could earn considerable profits from these and similar recommendations within short periods of time because the futures market is highly speculative and the likelihood of retail customers realizing the described profits was remote at best rather than likely.

### E. BKF Failed to Advise Customers that the Vast Majority of Its Customers Lost Money Trading

26. BKF, through its APs, including, but not limited to Mesa and Nersian, told prospective customers that BKF had been doing business for years, when, in fact, it only commenced doing business in 2002. BKF APs also told prospective customers that BKF had done very well for customers who traded futures and options on futures in accordance with the AP's recommendations, when, in fact, an overwhelming majority of BKF's customers lost money trading futures and options on futures through BKF. BKF's APs knew or should have known that these representations were false.

27. Approximately 257 BKF customer accounts were carried at Vision and 32 accounts were carried at Alaron. These accounts incurred total aggregate losses in excess of $1.7 million

while BKF earned more than $800,000 in commissions. BKF's APs, including, but not limited to Mesa and Nersian, never disclosed to customers and prospective customers that approximately 93 percent of BKF's customers who traded closed their accounts with overall losses.

### F. BKF Provided a Fraudulent or Misleading Advertisement to Customers

28. BKF provided prospective customers with promotional material entitled "Heating Oil: Facts & Information." The package contained outdated articles from the years 2000 and 2001 that discussed heating oil prices rising in the winter. A BKF employee provided misleading written commentary to these articles, which discussed seasonal trends of the heating oil market, but failed to discuss the limitations of such trends. Further, the commentary made references to dramatic historical price moves with a suggestion that the same dramatic move is likely to occur again. Because it unreasonably exaggerated the likelihood of dramatic profits in a short period of time, the commentary was fraudulent or misleading

### G. Barale Controlled BKF and Failed to Diligently Supervise BKF's APs

29. Barale founded BKF and the National Futures Association's ("NFA") registration records list him as the president and a principal of BKF since its inception. Additionally, Barale signed the "Introducing Agreement" contracts with Vision and Alaron on behalf of BKF, and he is also the sole signatory on BKF's bank accounts at Union Planters and Gibralter Banks.

30. Barale, as CEO and president, was responsible for BKF's overall operations. He made the day-to-day decisions necessary to run BKF and he had final approval of policies and procedures at BKF.

31. Barale oversaw the supervision of BKF's APs. Barale also handled customer complaints and compliance issues. When customers called and could not reach the AP that was handling their account, Barale advised them that he was the boss and that he would address any problems. However, Barale did not create a program of supervision to detect and prevent BKF's APs, including, but not limited to Mesa and Nersian, from making misleading and fraudulent statements to customers and prospective customers regarding futures and options trading. On

information and belief, BKF did not have a compliance manual or any written procedures that its APs were to follow with respect to customer solicitation, distribution of promotional material, and customer complaints. The only guidance BKF's APs received was a general overview each morning of trade recommendations to make to customers and prospective customers with some strategy pertaining to presenting those recommendations.

## V. VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### COUNT ONE

### VIOLATION OF SECTIONS 4b(a)(2)(i) AND (iii) OF THE ACT: FRAUD BY MISREPRESENTATIONS AND FALSE STATEMENTS

32. The allegations set forth in paragraphs 1 through 31 are re-alleged and incorporated herein.

33. Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii), make it unlawful for any person to cheat or defraud or attempt to cheat or defraud; or willfully deceive or attempt to deceive by any means whatsoever other persons in or in connection with orders to make, or the making of, contracts of sale of commodities, for future delivery, made, or to be made, for or on behalf of such other persons where such contracts for future delivery were or may have been used for (a) hedging any transaction in interstate commerce in such commodity, or the products or byproducts thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof.

34. BKF employees, and specifically Mesa and Nersian, violated Section 4b(a)(2)(i) and (iii) of the Act by cheating or defrauding or attempting to cheat or defraud customers or prospective customers of BKF and willfully deceiving or attempting to deceive customers or prospective customers by, among other things: (1) exaggerating the magnitude and likelihood of potential profit and downplaying the risk of loss to customers; (2) representing to customers that their trade recommendations could result in large profits within short periods of time when they

had no reasonable basis for these representations; (3) failing to inform customers and prospective customers that approximately 93 percent of their customers lost money; and (4) providing a fraudulent or misleading advertisement to customers.

35. The actions and omissions of BKF employees, and specifically Mesa and Nersian, described in this Count were done within the scope of their employment with BKF and, therefore, BKF is liable for their violations of Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii), pursuant to Section 2(a)(1)(B) of the Act,
7 U.S.C. § 2(a)(1)(B).

36. Barale, as CEO and president controls or controlled BKF, directly and indirectly, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations described in this Count. Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Barale is liable for BKF's violations of Section 4b(a)(2)(i) and (iii) of the Act, as described in this Count.

37. Each material misrepresentation or omission made, including, but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4b(a)(2)(i) and (iii) of the Act.

## COUNT TWO

### VIOLATIONS OF SECTIONS 4c(b) OF THE ACT AND REGULATION 33.10: FRAUD IN CONNECTION WITH COMMODITY OPTION TRANSACTIONS

38. The allegations set forth in paragraphs 1 through 31 are re-alleged and incorporated herein.

39. Section 4c(b), 7 U.S.C. § 6c(b) of the Act and Regulation 33.10,
17 C.F.R. § 33.10, makes it unlawful for any person directly or indirectly to cheat or defraud or attempt to cheat or defraud any other person; to make or cause to be made to any other person any false report or statement thereof or cause to be entered for any person any false record thereof; to deceive or attempt to deceive any other person by any means whatsoever in or in connection with

an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction.

40.  BKF employees, and specifically Mesa and Nersian, violated Section 4c(b) and Regulation 33.10 in connection with commodity options transactions by:

(1) exaggerating the magnitude and likelihood of potential profit and downplaying the risk of loss to customers; (2) representing to customers that their trade recommendations could result in large profits within short periods of time when they had no reasonable basis for these representations; (3) failing to inform customers and prospective customers that approximately 93 percent of BKF's customers who traded lost money; and

(4) providing a fraudulent or misleading advertisement to customers.

41.  The actions and omissions of BKF's APs described in this Count Two were done within the scope of their employment with BKF and, therefore, BKF is also liable for their violations of Section 4c(b) of the Act and Regulation 33.10, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B).

42.  Barale, as CEO and president, directly and indirectly controlled BKF and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations described in this Count Two.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Barale is liable for the violations described in this Count Two, to the same extent as BKF.

43.  Each material misrepresentation or omission made, including, but not limited, to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4c(b) of the Act, and Regulation 33.10.

## COUNT THREE

## VIOLATION OF COMMISSION REGULATION 166.3: FAILURE TO SUPERVISE DILIGENTLY

44.     The allegations set forth in paragraphs 1 through 31 are re-alleged and incorporated herein.

45.     Regulation 166.3, 17 C.F.R. § 166.3, requires each Commission registrant, except an AP who has no supervisory duties, to supervise diligently the handling of all commodity interest accounts carried, operated, advised or introduced by the registrant and all other activities of its partners, officers, employees and agents relating to its business as a Commission registrant.

46.     Barale violated Regulation 166.3 because he failed to diligently supervise the APs handling of commodity interest accounts by allowing the APs to discuss seasonal patterns and well known events such as the war with Iraq in order to convince customers to trade. Barale also failed to create a program of supervision to detect and prevent BKF's APs from making misleading and fraudulent statements to customers and prospective customers regarding futures and options on futures trading.

47.     Consequently, Barale allowed BKF's APs to: (1) exaggerate the magnitude and likelihood of potential profit and downplay the risk of loss; (2) represent to customers that their trade recommendations could result in large profits within short periods of time based on these events when they had no reasonable basis for these representations; (3) fail to inform customers and prospective customers that approximately 93 percent of BKF's customers who traded lost money; and (4) provide false or misleading advertisements to customers.

48.     Each failure to supervise diligently is alleged as a separate and distinct violation of Regulation 166.3.

## V. RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers:

A.  Find that Defendants violated Sections 4b(a)(2)(i) and (iii), and 4c(b) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii), and 6c(b), and Regulation 33.10, 17 C.F.R. § 33.10; and additionally, that Barale violated Regulation 166.3, 17 C.F.R. §166.3.

B.  Enter a restraining order and/or an order of preliminary injunction restraining and enjoining Defendants and all persons insofar as they are acting in the capacity of their agents, servants, successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with them who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

    1.  Destroying, mutilating, concealing, altering or disposing of any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants, wherever located, including all such records concerning Defendants' business operations;

    2.  Refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants, wherever located, including all such records concerning Defendants' business operations; and

    3.  Withdrawing, transferring, removing, dissipating, concealing or disposing of, in any manner, any funds, assets, or other property, wherever situated, including but not limited to, all funds, personal property, money or securities held in safes, safety deposit boxes and all funds on deposit in any financial institution, bank or savings and loan account held by, under the control, or in the name of defendants.

C.  Enter orders of preliminary and permanent injunctions prohibiting the Defendants and any other person or entity associated with them, including any successor thereof, from:

13

1. engaging in conduct, in violation of Sections 4b(a)(2)(i) and (iii), and 4c(b) of Act and Regulation 33.10;

2. engaging in, controlling, or directing the trading of any commodity futures or options accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise; and

3. applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), or acting as a principal, agent, officer or employee of any person registered, required to be registered, or exempted from registration with the Commission, except as provided for in Regulation 4.14(a)(9). This includes, but is not limited to, soliciting, accepting, or receiving any funds, revenue or other property from any other person, giving commodity trading advice for compensation, except as provided in Regulation 4.14(a)(9), or soliciting prospective customers related to the purchase or sale of commodity futures or options.

D. Enter orders of preliminary and permanent injunctions prohibiting defendant Barale and any other person or entity associated with him, including any successor thereof, from engaging in conduct, in violation of Regulation 166.3.

E. Enter an order directing the Defendants and any successor thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations of the Act or Regulations, as described herein, and interest thereon from the date of such violations;

F. Enter an order directing the Defendants to make full restitution to every customer whose funds were received by them as a result of acts and practices which constituted violations of the Act and Regulations, as described herein, including pre-judgment interest;

14

G. Enter an order assessing a civil monetary penalty against each Defendant in the amount of not more than the higher of $120,000 or triple the monetary gain to each Defendant for each violation by the Defendants of the Act or Regulations;

H. Enter an order directing that the Defendants make an accounting to the court of all their assets and liabilities, together with all funds they received from and paid to customers and other persons in connection with commodity futures or options on commodity futures transactions, and all disbursements for any purpose whatsoever of funds received from commodity clients, including salaries, commissions, fees, loans and other disbursements of money and property of any kind, from, but not limited to, April 2002 to and including the date of such accounting;

I. Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2); and

J. Order such other and further remedial ancillary relief as the Court may deem appropriate.

Dated: October 8, 2004

Respectfully submitted.

ATTORNEYS FOR PLAINTIFF
COMMODITY FUTURES TRADING
COMMISSION
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0714 facsimile

Vincent B. Johnson
Florida Bar ID Number A5500854
Trial Attorney
(312) 596-0547
vjohnson@cftc.gov

Rosemary Hollinger
Florida Bar ID Number A5500849
Regional Counsel and Associate Director
(312) 596-0520
rhollinger@cftc.gov

15

JS 44 11/99 **CIVIL COVER SHEET** COUNTY IN WHICH THIS ACTION AROSE: _____

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**04-22549**

**CIV-SEITZ**

**MAGISTRATE JUDGE BANDSTRA**

### I. (a) PLAINTIFFS

U.S. Commodity Futures Trading Commission

### DEFENDANTS

Brickell Key Financial, LLC, Eduardo Barale, Michael Mesa, and Malini Nersian

(b) County of Residence of First Listed: **Dade**  04cv22549/PAS

County of Residence of First Listed: Dade
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(C) Attorney's (Firm Name, Address, and Telephone Number)

U.S. Commodity Futures Trading Commission
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question (U.S. Government Not a Party)
[ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PLA | DEF |  | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 310 Airplane | 620 Other Food & Drug |  | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability | 625 Drug Related Seizure of Property 21 881 | 423 Withdrawal 28 USC 157 | 430 Banks and Banking |
| 140 Negotiable Instrument |  |  |  | 450 Commerce/ICC |
| 150 Recovery of Overpayment and Enforcement of Judgment | **PERSONAL INJURY** 362 Personal Injury-Med. Malpractice 365 Personal Injury - Product Liability | 630 Liquor Laws |  | 460 Deportation |
|  | 320 Assault Libel And Slander | 640 R.R. & Truck | **PROPERTY RIGHTS** | 470 Racketeer Influenced & Corrupt Organizations |
| 151 Medicare Act | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 650 Airline Regs. | 820 Copyrights | 810 Selective Service |
| 152 Recovery of Defaulted Student Loans (Excl Veterans) | 340 Marine | 660 Occupational Safety/Health | 830 Patent | [X] 850 Securities/Commodities/Exchange |
| 153 Recovery of Overpayment of Veteran's Benefits | 345 Marine Product Liability | **PERSONAL PROPERTY** 370 Other Fraud 371 Truth in Lending 380 Other Personal Property Damage 385 Property Damage Product Liability | 690 Other | 840 Trademark | 875 Customer Challenge 12 USC 3410 |
| 160 Stockholders' Suits | 350 Motor Vehicle | **LABOR** | **SOCIAL SECURITY** | 891 Agricultural Acts |
| 190 Other Contract | 355 Motor Vehicle Product Liability | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 892 Economic Stabilization Act |
| 195 Contract Product Liability | 360 Other Personal Injury | 720 Labor/Mgmt. Relations | 862 Black Lung (923) 863 DIWC/DIWW (405(g)) 864 SSID Title XVI 865 RSI (405(g)) | 893 Environmental Matters 894 Energy Allocation Act 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 730 Labor/Mgmt. Reporting & Disclosure Act |  |  |
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate Sentence | 740 Railway Labor Act | **FEDERAL TAX SUITS** | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 220 Foreclosure | 442 Employment | Habeas Corpus: |  |  |  |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations | 530 General | 790 Other Labor Litigation | 870 Taxes (U.S. Plaintiff or Defendant) | 950 Constitutionality of State Statutes |
| 240 Torts to Land | 444 Welfare | 535 Death Penalty |  |  |  |
| 245 Tort Product Liability | 440 Other Civil Rights | 540 Mandamus & Other | 791 Empl. Ret. Inc. Security Act | 871 IRS-Third Party 26 USC 7609 | 890 Other Statutory Actions |
| 290 All Other Real Property |  | 550 Civil Rights 555 Prison Condition |  |  |  |

### V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

[X] Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from another district (specify)
[ ] 6 Multi district Litigation
[ ] 7 Appeal to District Judge from Magistrate

### VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Plaintiff U.S. Commodity Futures Trading Commission brings this action to enjoin the defendants' violation of the CEA, as amended.

### VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
$DEMAND
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

### VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE _____
SIGNATURE OF ATTORNEY OF RECORD
*Vincent B Johnson*